NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-53

STATE OF LOUISIANA

VERSUS

CHARLES D. WASHINGTON

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 08-309
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Hon. John Frederick Johnson
D. A., Concordia
4001 Carter St., Suite 9
Vidalia, La 71373
(318) 336-5526
Counsel for Plaintiff/Appellee:
State of Louisiana

**William Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
**Charles D. Washington**

**SAUNDERS, Judge.**

On March 26, 2008, the State filed a bill of information charging Defendant, Charles D. Washington, with simple burglary, a violation of La.R.S. 14:62. On the same date, the State charged him with simple battery, a violation of La.R.S. 14:35. On March 9, 2009, a jury was selected; the next day it heard evidence and found Defendant guilty as charged. The court conducted a simultaneous bench trial and found Defendant guilty of simple battery. On March 11, 2009, the court sentenced Defendant to serve twelve years at hard labor for the simple burglary conviction, and six months for the simple battery conviction. The latter sentence was ordered to run concurrently with the longer sentence.

The trial court granted Defendant's motion for an out-of-time appeal on October 14, 2009. He now seeks review by this court, assigning three errors.

## FACTS:

On February 13, 2008, at approximately 6:00 p.m., the victim, Sadie Finley, visited her daughter's workplace, a daycare center in Ferriday. While she was there, "a young black guy" with a medium build entered the business. He was wearing black pants, a black hooded sweatshirt, and a black skullcap. Apparently, the victim's daughter directed him to a restroom, and he soon left the daycare center. A few minutes later, the victim went outside to get some food she had prepared for her daughter. Her five-year-old grandchild went outside with her.

As she reached into the vehicle to retrieve the food, the young man approached her, took hold of her shirt, and asked her what she had. She told him, but then advised him to back up. He did so, but retained a grip on her shirt. As she bent over to get food for her daughter, Defendant tried to push her into the car. She told her grandson to go get her husband, and beat her assailant over the head with a pot lid.

He ran away, and the victim's daughter called the police. At trial, Mrs. Finley testified that her assailant "looked just like the guy" who was in the daycare earlier. She identified Defendant in court as the man who attacked her.

On the same date, the second victim, Bernice Gaines, was working at a Jackson Hewitt tax-preparation office in Ferriday. At the end of her shift, which lasted from 1:00 p.m. until 7:00 p.m., she went out to her car and noticed that some items were askew. Also, her tennis shoes were missing. Ms. Gaines immediately called the police.

Michael Bell, then a member of the Ferriday Police Department, responded to the first scene, outside the daycare center. He heard Mrs. Finley giving a description of Defendant to another officer, and left to search for him. While driving, he heard a report from the dispatcher regarding the theft of Ms. Gaines' shoes. Bell turned to head in the direction of the latter crime, and as he proceeded, he saw Defendant carrying some white tennis shoes. When Bell hailed him, Defendant threw the shoes at the unit and ran away. Bell gave chase, and caught Defendant among some nearby delivery vehicles. The offender struggled, but Bell was able to handcuff him.

Bell then *Mirandized* Defendant and placed him into the unit. Defendant's jacket and skullcap had come off during the struggle, so Bell placed them on the seat next to Defendant. The officer also took custody of the white tennis shoes. Having secured Defendant, Bell drove back by the daycare center to let the other officer know he had arrested a suspect. In the daycare center parking lot, Mrs. Finley saw Defendant and identified him as her attacker. Bell testified that the two crime scenes were less than a quarter-mile apart, and that his part in the incident lasted less than a half-hour. The second victim, Ms. Gaines, later came to the police station and

2

identified the white tennis shoes as hers. At some point, Bell determined that Defendant had rolled coins in his pocket. Ms. Gaines testified that some rolls of coins were stolen from her car, along with the tennis shoes.

Defendant spoke to an investigator with the Concordia Parish Sheriff's Office, and stated that he had accosted a woman near a daycare center and tried to take her purse, but she had hit him with something causing him to flee. Further, he stated that he then broke into a car and took some shoes. He claimed to have been high on cocaine during both incidents.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, Defendant argues that the evidence adduced against him at trial was entirely circumstantial, and thus insufficient to support his conviction for simple burglary. He does not attack his simple battery conviction.

The analysis for such arguments is well-established:

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; *see State v. Neal*, 2000-0674 p. 9 (La.6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La. R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Neal*, 2000-0674 p. 9, 796 So.2d at 657.

*State v. Draughn*, 05-1825, p. 7 (La. 1/17/07), 950 So.2d 583, 592, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

Simple burglary is defined by La.R.S. 14:62, which states, in pertinent part, "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60 [aggravated burglary]."

As the State observes in its brief, its case at trial was not dependent entirely upon circumstantial evidence, as Defendant admitted to breaking into a car and taking some shoes. Further, he also admitted that the shoes he had when the patrol officer, Bell, approached him were the shoes he had taken from the car. The burglary victim, Ms. Gaines, later identified them as her shoes. Defendant argues she could have dropped her shoes outside the car, but she testified that she put them inside. Thus, Defendant's admission and the victim's identification of the shoes leave no room for a reasonable hypothesis of innocence.

Therefore, we find that the trial evidence supports Defendant's conviction for simple burglary.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, Defendant argues that the trial court erred by conducting simultaneous trials of the misdemeanor, simple battery, and the felony, simple burglary. Further, he contends that trying the separately-billed charges against him at the same time allowed the jury to hear "other crimes evidence" it would not have heard had the trials had been separate.

Defendant states that actual consolidation did not occur; instead the court conducted a bench trial and jury trial simultaneously. We note that on the day of jury selection, March 9, 2009, the trial judge orally ordered that the matters be

4

consolidated. The next day, before the jury was seated to hear evidence, Defense counsel moved that the two matters should not have been consolidated. His supporting arguments were similar to those he now makes on appeal.

The trial court stated that it would be difficult to try the two offenses separately, because "the way the matter is structured [it would] be virtually impossible to try one without mention of the other." The trial court held that the factual interrelationship of the cases, with potential attendant difficulties for witnesses, the cost of two trials, and the general concept of judicial economy outweighed potential prejudice to Defendant. Thus, it denied defense counsel's motion.

On appeal, the State argues that such simultaneous trials have often been seen in Louisiana jurisprudence, and that there is no "other crimes evidence" problem, because the evidence regarding each of the two criminal incidents was "res gestae" or "integral acts evidence" regarding the other.

Consolidation of cases is governed by La.Code Crim.P. art. 706, which states:

> Upon motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment. The procedure thereafter shall be the same as if the prosecution were under a single indictment.

We observe that the article does not allow a court to consolidate cases *sua sponte*, or even on a State motion. Thus, the consolidation order in the present case constituted error. *See State v. Comeaux*, 408 So.2d 1099, 1104-05 (La.1981). Also, the offenses were not triable by the same mode of trial and, thus, could not have been joined in a single indictment pursuant to La.Code Crim.P. art. 493.[1] Simple battery

---

[1] The article states:

(continued...)

is a misdemeanor, with a maximum sentence of six months, so it was not triable by jury. La.R.S. 14:35, La.Code Crim.P. art. 779. Simple burglary is a felony that may be punished with or without hard labor and, therefore, was triable by jury. La.R.S. 14:62, La.Code. Crim.P. art. 782(A). Accordingly, the consolidation order was also technically improper on the basis that the two offenses were not triable by the same mode of trial, and could not have been joined in the same bill.

However, Defendant must demonstrate prejudice, as our supreme court has explained:

> In the present case, the state's "housekeeping" immediately before trial did not involve formal consolidation of the cases through the filing of a superceding indictment or amendment of the original indictments. However, for purposes of appellate review, whether the claim involves misjoinder of offenses, prejudicial joinder, or improper consolidation, the defendant must show prejudice to establish that trial of two or more crimes in a single proceeding "affect[ed] his substantial rights." La.C.Cr.P. art. 920; *see State v. Strickland*, 94-0025, p. 13 (La.11/1/96), 683 So.2d 218, 226 (although prior jurisprudence of the Court distinguished between misjoinder and prejudicial joinder to determine whether defendant's proper remedy at the trial court level was a motion to quash or motion to sever, at the appellate level "the distinction becomes blurred since the basis for the prohibition against both misjoinder and prejudicial joinder is, essentially, prejudice to the defendant.... Thus, errors of both types may be reviewed to determine whether the substantial rights of the defendant were prejudiced.") (citing *State v. Mallett*, 357 So.2d 1105, 1109 (La.1978)) ("The prohibition against misjoinder of offenses and improper consolidation of offenses for trial is grounded on the possible prejudice arising from a single trial on two or more offenses.").

> We therefore agree with the court of appeal's observation in the present case that "[t]he same considerations used by the trial court in determining whether prejudice may result from joinder can also be used

---

[1](...continued)
> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

to determine whether prejudice results from consolidation." *Crochet*, 04-0628 at 6, 897 So.2d at 735. Those considerations include "whether the jury would be confused by the various charges; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile." *State v. Washington*, 386 So.2d 1368, 1371 (La.1980).

However, consideration of those factors leads to the conclusion in the present case, as Judge McDonald found in his dissent, that the defendant was not prejudiced by the consolidation. The facts of each incident were simple and easily distinguishable from each other. In their opening statements, the state and the defense referred to the charges as separate offenses and stressed to the jurors the importance of considering the charges independently. The evidence against defendant, which consisted of the victims' testimony, was not complex and was presented in an orderly fashion, allowing the jury to segregate the charges and the evidence. Nor was the defense stymied by the consolidation of the offenses. In fact, defense counsel indicated before trial that he could conclude his defense in one day. Although the state consolidated the cases immediately before jury selection began, defense counsel did not move for a continuance on grounds that he was unprepared to defend one or more of the cases, and his subsequent representation of defendant at trial indicated that he was fully prepared to answer the allegations in all three cases.

Moreover, consolidation of the cases did not expose the jury to evidence that was admissible as to one or more of the counts but inadmissible as to other counts. . . . The trial court gave careful attention to limiting the prejudice to defendant by charging the jury as to the limited use of the other crimes evidence involving the stepdaughters after each witness testified and repeated those instructions in its general charge to the jury at the close of the case. While the court did not, at the request of defense counsel, expressly instruct jurors that they could not consider the elements of one offense in determining their verdict as to any of the other crimes charged, the court discussed the elements of the charged offenses and their responsive verdicts in the context of addressing the separate verdict forms the court would provide jurors on each count to record their verdicts.

*State v. Crochet*, 05-123, pp. 5-8 (La. 6/23/06), 931 So.2d 1083, 1086-88 (footnotes omitted).

In the present case, the court did not give the jury a limiting instruction regarding the simple battery. However, this court's reading of the jury instructions shows they were clearly focused on the simple burglary. Also, the prosecutor stated in his closing argument that the battery offense was not before the jury. The prosecutor had to reiterate this point on rebuttal, because Defense counsel referred to the scene of the battery and to eyewitness identification, which existed in the battery case but not in the burglary.

Although closing arguments are not evidence, it is worth noting that Defense counsel chose to call attention to the battery. Also, the two crimes occurred within minutes of one another, and the facts were related, especially in regard to Bell's rapid discovery and arrest of Defendant for the burglary. As discussed earlier, Bell initially responded to the call about the battery, heard that victim's description of Defendant, and left the scene to try to apprehend him. Although Defendant argues otherwise, the State's presentation of evidence would have made little sense if references to the battery had been kept from the jury.

Our supreme court has stated:

> Generally, courts may not admit evidence of other crimes to show defendant is a man of bad character who has acted in conformity with his bad character. However, under La. C.E. art. 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as *res gestae*, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence "to insure that 'the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *State v. Colomb*, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981)). The

8

*res gestae* doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. *State v. Huizar*, 414 So.2d 741, 748 (La.1982); *State v. Kimble*, 407 So.2d 693, 698 (La.1981). In addition, as this court recently observed, integral act (*res gestae*) evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its "narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.' " *Colomb*, 747 So.2d at 1076 (quoting *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

Although defendant contends the evidence of other crimes was erroneously admitted as *res gestae* because the crimes involved different victims in different states, over a seven-day span, as discussed above, the doctrine of *res gestae* is designed to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. In *State v. Edwards*, 406 So.2d 1331, 1350-1351 (La.1981), testimony that defendant and another accomplice arrived at a third person's house; that defendant suggested they "go make a hit;" that they first went to grocery store where defendant stole some wine; that they ultimately went to the victim's house, killed her, and sped away from the scene in the victim's automobile; that they followed another woman to a college campus in an attempt to snatch her purse but abandoned the plan when she saw them coming; and that they went to a convenience store looking for still another "hustle" until the appearance of a police officer terminated the night's activities, was admissible as part of the *res gestae* in defendant's trial for the victim's murder. Again, in *State v. Brewington*, 601 So.2d 656 (La.1992), this court held the trial court did not err in permitting the prosecution to admit evidence which tended to show the accused possessed crack cocaine and a .357 caliber pistol "three hours after the victim was last seen alive in his presence and less than two hours before her death" because the evidence, "formed an inseparable part of the state's substantial circumstantial evidence linking him to the shooting," and because evidence of cocaine possession was "an integral part of the act or transaction that was the subject of the present proceeding." *See also State v. Matthews*, 292 So.2d 226, 227 (La.1974) (testimony that defendant, who was charged with armed robbery, stopped four persons and demanded their coats and when one person attempted to flee, defendant shot and killed him, demonstrated the robbery and shooting were part of a single, continuous transaction, integrated in both space and time, and testimony and photographs relating to the death of one of the victims were admissible).

*State v. Taylor*, 01-1638, pp. 10-12 (La. 1/14/03), 838 So.2d 729, 741-42, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036 (2004) (Footnote omitted).

Further, even if error occurred, it may be harmless. *State v. Bell*, 99-3278 (La. 12/8/00), 776 So.2d 418. "The question that must be asked in a harmless-error analysis is whether the guilty verdict 'was surely unattributable to the error.' *State v. Johnson*, [94-1379 (La.11/27/95), 664 So.2d 94] *supra* at 102; *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)." *State v. Robertson*, 06-1537 (La. 1/16/08), 988 So.2d 166, 172. In the present case, we find that the verdict is unattributable to any error. The burglary victim, Ms. Gaines, discovered that her shoes and some rolled coins had been taken from her car. Within minutes a police officer apprehended Defendant, who had the shoes and rolled coins in his possession. Subsequently, Defendant admitted to stealing the shoes out of a car. Thus, the State's evidence solidly supported the verdict. Also, the case was quite straightforward, so there is little chance that the evidence of the battery confused the jury.

Defendant also notes the jury heard testimony that the initial call was for a sexual offense. On cross-examination, Bell testified that he was originally dispatched for an attempted rape. Defense counsel first asked that the response be stricken; after a bench conference, he asked the court to instruct the jury to disregard the answer, the court then instructed the jury as requested. Later, on direct testimony, Corporal Valerie Clark of the Ferriday Police Department also testified that the initial dispatch was for an attempted rape. Counsel again requested, and received, an instruction to the jury by the court to disregard the statement.

10

We note that defense counsel did not request a mistrial in either instance, and does not now argue that one should have been declared. Rather, counsel appears to argue that the witnesses' statements constituted other crimes evidence. We find that a fair reading of the record indicates the witnesses' descriptions of the initial dispatch did not prejudice Defendant's case. All of the other evidence adduced at trial clearly demonstrated that no sex offense was involved. Mrs. Finley's testimony did not suggest any sexual component to the battery.

Accordingly, for the reasons discussed above, we find that this assignment or error lacks merit.

**ASSIGNMENT OF ERROR NO. 3:**

In his final assignment of error, Defendant argues that his twenty-year sentence is excessive. We do not agree.

Defendant received his sentence as a habitual offender. The record shows that the habitual offender proceeding was separately billed, and received the trial docket number 09-0584. However, Defendant's application for post-conviction relief, seeking an out-of-time appeal, listed only the docket numbers for the underlying offenses, 08-0309 and 08-0310. The hearing on the application also listed those two docket numbers, but not 09-0584.[2]

We find that the substantive claim is barred, because the sentence was agreed upon as part of a plea bargain in which Defendant elected to admit to being a habitual

---

[2]At a hearing on March 11, 2009, the trial court sentenced Defendant to twelve years for the burglary, docket number 08-0309. After a recess, he admitted to being a habitual offender, and the court sentenced him to twenty years at hard labor. The court vacated the sentenced imposed earlier under docket number 08-0309. Earlier on the same date, Defendant pled *nolo contendre* and was sentenced to twelve years on another offense that is not a subject of the present appeal. The record is not clear, but the docket number for that case was apparently 08-0468. Defendant refers to an eight-year sentence for the burglary at issue, and such a term was mentioned at the hearing below. However, as already observed, the court ultimately sentenced him to twelve years under docket number 08-0309.

offender. La.Code Crim.P. art. 881.2(A)(2), *State v. Decay*, 07-966 (La.App. 5 Cir. 6/19/08), 989 So.2d 132, *writ denied*, 08-1634 (La. 4/13/09), 5 So.3d 161.

Therefore, the assignment lacks merit.

## DECREE:

The conviction and sentence are affirmed.

**AFFIRMED.**